# Exhibit

# N

# Exhibit

# N-1

## <u>DECLARATION OF ANDREW MALHOTRA</u>

I, Andrew Malhotra, based on my personal knowledge and pursuant to 28 U.S.C. § 1746, state as follows:

1.     I am over the age of 18 and I have personal knowledge of the matters presented in this declaration, and if called upon I could and would testify to the truth of the facts contained herein.

2.     I am currently employed by Wells Fargo as a Regional Bank Personal Banker (RBPB) 2 in the New Rochelle Branch.  New Rochelle has always been my home branch.  I was first hired by First Union Bank in November of 2001 as a Financial Specialist.  After one year in that position I was promoted to a Senior Financial Specialist.  I continued to serve in this Senior Financial Specialist position after First Union purchased Wachovia in 2005.  When Wachovia became Wells Fargo I became a RBPB 1.  In 2009 I was promoted to my current position of RBPB 2, which is a salaried position.

3.     My Store Manager at New Rochelle for the first 10 years of my employment was Johanna Culligan.  From the very beginning of my employment Johanna told me, and all other bankers to enter our time accurately.  Johanna told me that failing to enter my time accurately is a policy violation, and I could be terminated for not doing so.  In my experience, all managers that I have worked with - including the 5 managers that have been in charge of the New Rochelle branch since Johanna left in 2011 - have taken the same approach as Johanna and told employees to accurately record all hours worked.

4.     As a result of Johanna's warning, I have always entered the precise time that I worked on my time sheet.  If I work an extra 10 minutes, I am recording that time as I do not want to do anything that could be viewed as a policy violation.

1


Initials

5.      Since my time working at First Union up through my time at Wells Fargo I entered my time each day.  At Wachovia we used a program called Web Time and at Wells Fargo we use Time Tracker.  During my time as a non-exempt employee, the first thing that I did when I arrived to work is turn on my computer and enter the time that I arrived at the branch.  I entered the time I left for lunch and came back from lunch during the course of the day and then the very last thing that I did before leaving for the day is record my end time.

6.      A manager has never reduced the time that I entered in Web Time, or Time Tracker, from the numbers that I entered.  It was my responsibility to enter my time worked, as well as the times that I took a break, into both Web Time and Time Tracker.  There was never any automatic deductions made for my lunch break.

7.      The only time a manager ever made an adjustment to my time entry is on one occasion when I left the branch early because I was sick and I did not enter my end time prior to leaving because of my illness.  The next time I logged into Time Tracker I noticed my manager had entered the time that I left the branch due to my illness.

8.      During my entire career with First Union/Wachovia/Wells Fargo I have never heard of a manager cutting the hours an employee entered into Webtime or Time Tracker so as to avoid them being paid for hours that they worked or to avoid paying them overtime compensation.

9.      During my time at First Union/Wachovia/Wells Fargo my managers encouraged us to work overtime and was happy to see that we were working hard and hitting our numbers.  For example, there was one night in 2006 when I worked until 9:00 p.m. because there was an incentive for reaching 200% above target goal and additional incentives above that for making even more sales.  The next day my manager asked me why I was worked so late the day before

2


Initials

and I told her about my desire to hit the heightened bonus level. Johanna was glad that I took this initiative and was perfectly fine with me working the additional time even though she did not previously approve me working until 9:00 pm. In fact, due to my own desire to hit additional sales goals I worked 53 hours during this week in 2006 and received overtime compensation for the time I worked over 40 hours even though this additional time worked was not approved.

10.     During my time at First Union/Wachovia/Wells Fargo I never had to receive permission to work over 40 hours. It has always been generally up to me how many hours to work in order to get the job done. Since I take my work-life balance very seriously and have two children I am not interested in working a lot of overtime hours since I am able to hit my numbers without doing so. In my opinion, it is possible for me to hit my sales goals working as little as 30 hours per week.

11.     During the entire time that I have worked at the New Rochelle branch I have not been responsible for performing any branch opening or closing procedures.

12.     I have always taken at least a 30 minute lunch each day. On some occasions I take an hour for lunch if I have a personal errand to run. If one of my customers comes into the bank during my lunch I may go back to work in order to help them and then resume my break after they leave. If I do take a break from my lunch to help a customer, I then resume my break and ensure I take a full 30 minutes.

13.     In the morning, I usually arrive at 8:30 a.m. and start getting myself ready for the day. Other than attending the morning "huddle" meeting - which takes place about 2 times per week - I spend this time preparing for my appointments for the day. As a banker, it is not my responsibility to perform opening or closing procedures as these tasks, such as opening the vault, are part of the bank tellers responsibilities.

3


Initials

14.     If I have to stay late to attend any branch specific or regional meeting I always record this time on my timesheet and am paid for this time.

15.     I occasionally worked "call nights" during my employment with First Union/Wachovia/Wells Fargo. We usually started the "call night" during regular bank hours and would stay an additional hour or two after our normal end time to finish up making our calls. I always recorded the time that I spent working on a call time on my timesheet and was paid for this time.

16.     Although I do not do them frequently, I occasionally performed "offsite" client visits in order to generate new business. While I generally performed these visits during work hours there were sometimes that I performed "offsites" during non-business hours. For example, on one occasion I went to Iona College on a Saturday afternoon from 1 p.m. until 4:00 p.m. during orientation to try and sign up new accounts. The following Monday I recorded this time worked in Time Tracker and was paid for this time I spent offsite.

## VOLUNTARY PARTICIPATION

17.     I have voluntarily agreed to provide this declaration to Wells Fargo. I understand that my decision whether to provide this declaration will have no effect on my job. I have had the time to review the contents of this declaration and the opportunity to make any changes necessary so that it is accurate. I agreed to speak with the attorneys representing Wells Fargo voluntarily. Before speaking with me, the attorneys for Wells Fargo explained to me that I did not need to speak with them, and that I could stop the discussion at any time. The attorneys for Wells Fargo informed me that my employment with Wells Fargo would not be affected regardless of what I told them, or if I decided I did not want to speak with them. The attorneys further explained to me that I could speak with the lawyers representing the plaintiffs.

4


Initials

I declare under penalty of perjury  under the laws of the United States that the foregoing is true and correct.  Executed on ___2/13_____, 2013 in _White Plains___,
New York.

Andrew Malhotra


Initials

# Exhibit
# N-2

## DECLARATION OF CHARLES SCHULER

I, Charles Schuler, based on my personal knowledge and pursuant to 28 U.S.C. § 1746, state as follows:

1.     I am over the age of 18 and I have personal knowledge of the matters presented in this Declaration. If called upon I could and would testify to the truth of the facts contained herein.

2.     I am currently employed as a Personal Banker 2 at the Wells Fargo bank in Hopewell Junction. I have worked at this location since approximately April 2001, first as a Senior Financial Specialists and then as a Financial Specialist. When Wachovia merged with Wells Fargo, I became I Personal Banker 2.

3.     At Wachovia, I would typically start my shift at 8:30 and end 5:00 p.m. The bank hours back then were 9:00 a.m. to 3:00 p.m. Monday thru Thursday. On Fridays, the bank was open until 6:00 p.m. I would also work every other Saturday when the bank was open 9:00 a.m. to 1:00 p.m. When I worked on Saturdays, that time would typically be overtime for me. I logged that time on my timecard and I was paid for that time. The drive thru lane opened at 8:30 during the week and 9:00 a.m. on Saturdays.

4.     I typically work the same schedule now for Wells Fargo—8:30 and end 5:00 p.m. during weekdays (except for longer hours on Friday) and every other Saturday. But the bank hours changed slightly. Now, the bank still opens at 9:00 a.m. but closes at 5:00 p.m. Monday thru Thursday. Even though I have generally worked the same schedule at Wachovia and Wells Fargo, I have logged on my timecards that actual hours that I work each day, which vary slightly week to week, including weeks when I work overtime.

1

*CS*
Initials

5.      At Wachovia and Wells Fargo, I have not been required to perform opening procedures at the bank.  Based on my observations, the other Financial Specialists or Personal Bankers at my branch also have not been required to perform opening procedures.  At my location, the teller and the manager that are scheduled to open the drive-thru line each day at 8:30 perform the opening procedures, including the security checks and disarming the alarms. But because I work very close to the branch, on rare occasions (such as inclement weather) I have volunteered to perform opening procedures.  When that happens, I have typically arrived at the bank around 8:15 a.m.

6.      At Wachovia and Wells Fargo, I have not been required to perform closing procedures at the bank. Based on my observations, the other Financial Specialists or Personal Bankers at my branch also have not been required to perform closing procedures.  On rare occasions when I do assist with closing procedures (for example once last year), I logged that time and I got paid for it. This was the same case at Wachovia whenever I participated in closing procedures.

7.      At Wachovia and Wells Fargo, I participated in "call nights," usually in the first quarter of the year and on average once a week during those months.  During call nights, I stay after bank hours, from 5:00 pm. to 7:00 p.m., with the other Financial Specialists (when it was Wachovia) or Personal Bankers to call current or prospective clients.  I have never had an issue logging my time on my timecards for call nights.  I have always been paid for that time.  Based on my conversation with the other Financial Specialists (when it was Wachovia) or Personal Bankers at the branch, I they have been paid for call nights.

8.      At Wachovia and Wells Fargo, I coordinate my lunch break with the other Personal Bankers at my branch.  I usually take my lunch starting at 11:30, and they take their

2

*CS*
Initials

lunch break after me. During weeks when we do not have a call night, I usually take 30 minutes for lunch. During weeks when I have a call night scheduled, I usually take a one hour lunch. I usually always go home during my lunch breaks (I did that at Wachovia too). I do not do any work during my lunch time. On rare occasions, if a customer comes into the store to see my during lunch, my manager calls me at home, and I return to the bank to assist the customer. When that happens, I take the rest of my lunch break later in the day. I do not recall Wachovia or Wells Fargo taking automatic deductions for my lunch breaks. As far as I know, that has never happened to me.

9.      At Wachovia, I would sometimes participate in offsite marketing events, typically once a month or once a quarter. During those events, I would schedule a time to visit a local business and make a presentation to their employees. I participated in these events typically during my shift. On rare occasions, I would participate in a marketing event after hours. For example, I remember visiting a local nursery school after the bank closed from 4:30-6:30 p.m. I logged this time on my timecard without any problems and was paid for this time.

10.     At Wells Fargo, I am not required to participate in offsite events. My branch historically has not done well with offsite marketing events. So this is not part of my regular work. I have never been pressured or asked by anyone at Wells Fargo to perform offsite marketing without compensation.

11.     At Wachovia and Wells I have occasionally attended bank-wide meetings. For instance, I attend a morning "huddle" meeting at my bank each day lead by the bank managers where we discuss customer service, scheduling issues, and performance goals for the day. The meeting is held a few minutes before the bank opens at 9:00 a.m. I have always been paid for that time (at Wells Fargo and Wachovia). At Wachovia, we also had a monthly sales meeting

3

<u>C.S</u>
Initials

with the Sales Manager (i.e., the District Manager) at my branch. All of the Financial Specialists from the district would come to my branch for that meeting, which would last 1-2 hours. These meetings were typically after the bank closed. They would last from approximately 3:00-5:00 p.m. I was always paid for that time. I have never attended any bank meetings without logging that time and being compensated for that time.

12.     I also occasionally participate in district-wide or regional conference calls about new products or educational calls, or sales meeting. I have always logged that time on my timecards and was paid for that time. Whenever I had similar district-wide conference calls at Wachovia, I was always paid for that time as well.

13.     As a Financial Specialist and Personal Banker, I have always had various performance expectations and goals to meet. I have never had any problems meeting my performance goals and I have never worked off the clock at Wachovia or Wells Fargo.

14.     At Wachovia and Wells Fargo, I have used various electronic timekeeping systems to log my hours worked. I have been instructed by managers and during computer-based trainings that I am required to accurately log my hours worked and that it is a violation of company policy to work off the clock. These timekeeping systems allow me to input the actual time that I work. Whatever time I come in and leave work, I put that time on my timecard. My manager is a real stickler about that. He wants me to accurately reflect my hours worked. If I have to stay late or work extra on any particular day, I try to flex the rest of my schedule for that week by coming late or leaving early some other day that same week. But if that is not possible, I have logged overtime and my manager has always approved it.

15.     I remember when Wachovia reclassified the Financial Specialist position from exempt to non-exempt salaried with overtime. During this transition, the Wachovia Sales

4

Manager lead a meeting about reclassification with me and other Financial Specialists. She explained the new classification and explained how I was going to be paid. When I worked as a Financial Specialist, I understood that I was being paid a fixed salary for all my hours worked, plus overtime at half-time.

16.    I am not aware of any Wachovia Financial Specialists or Wells Fargo Personal Bankers at my branch or elsewhere who worked regular or overtime hours and were not properly paid for that work.

## **VOLUNTARY PARTICIPATION**

17.    I have voluntarily agreed to provide this declaration to Wells Fargo. I understand that my decision whether to provide this declaration will have no effect on my job. I have had the time to review the contents of this declaration and the opportunity to make any changes necessary so that it is accurate. I agreed to speak with the attorney representing Wells Fargo voluntarily. Before speaking with me, the attorney for Wells Fargo explained to me that I did not need to speak with them, and that I could stop the discussion at any time. The attorney for Wells Fargo informed me that my employment with Wells Fargo would not be affected regardless of what I told them, or if I decided I did not want to speak with them. The attorney for Wells Fargo further explained to me that I could speak with the lawyers representing the plaintiffs.

I declare under penalty of perjury  under the laws of the United States that the foregoing is true and correct. Executed on _____ February 12 __, 2013 in _White Plains,_ New York.

Charles Schuler
Charles Schuler

CS
Initials

5

# Exhibit
# N-3

## DECLARATION OF DEBORAH RAUKOHL

I, Deborah Raukohl, based on my personal knowledge and pursuant to 28 U.S.C. § 1746, state as follows:

1.      I am over the age of 18 and I have personal knowledge of the matters presented in this Declaration.  If called upon I could and would testify to the truth of the facts contained herein.

2.      I am currently employed as a Regional Bank Private Banker I at the Wells Fargo branch located in Shrub Oak, New York.  I have worked at that location since approximately 1999.  When that location was a Wachovia branch (prior to the Wachovia merger with Wells Fargo), I worked for Wachovia as a Senior Financial Specialist.  Michael Maxwell has been the store manager there (and my supervisor) for the last 4-5 years.

3.      Throughout my employment with Wachovia, the manager would typically prepare a work schedule for the bank employees each month and would post it inside the branch.  Now at Wells Fargo, the manager still makes a monthly work schedule for the branch, but each employee gets his or her own copy.  At Wachovia and Wells Fargo, the work schedule were and are used for scheduling and staffing purposes.  None of my managers have ever told me that the work schedules are meant to be substitutes for accurate timekeeping or that I was required to log on my timecards only the hours that were noted for me on the schedule.  On the contrary, I logged on my timecards (both at Wachovia and Wells Fargo) the actual hours that I worked each day, clocking in and out as necessary, not simply the hours that were listed in my schedule.

4.      At Wachovia, the bank was open M-F 9:00 a.m. to 3:00 p.m. (except we closed late on Thursdays at 6:00 p.m.).  The bank was open Saturdays from 10:00 a.m. to 3:00 p.m.  At Wachovia, I was typically scheduled to work 8:45-5:15 p.m. Monday thru Friday, plus one

1

Initials

Saturday every other week. I have essentially the same schedule now at Wells Fargo. The bank now is open M-F 9:00 a.m. to 5:00 p.m. (except we close late on Thursdays at 6:00 p.m.). The bank is open Saturdays from 9:00 a.m. to 1:00 p.m.

5.     I typically worked five days a week and the days I worked varied depending on my branch's scheduling needs. Although I am typically scheduled for approximately 40 hours each week, my actual hours worked have varied slightly from week to week or month to month over the years, depending on staffing at the branch, client needs, and how busy the bank is on any given week. There are definitely weeks when I have worked work more than 40 hours, including during my time at Wachovia. Whenever I have worked overtime (over 40 hours a week), I have logged that time on my timecard. For example, if a customer walks into the bank at 1:00 p.m. on Saturday, I still stay late and help the customer. I log that overtime on my timecard and my manager has always approved it.

6.     At Wachovia and now at Wells Fargo, I have always entered my hours spent performing any type of work (including overtime) into the electronic timekeeping system. I have used various timekeeping systems over the years. Typically at the end of each day or the following day, I enter my time to reflect when I began work during the day, when I took my lunch break, and when I stopped working each day. I logged my time essentially the same way at Wachovia. At Wachovia and Wells Fargo, my timecards have never been filled out for me or completed for me in advance. I had to go into the timekeeping systems and input my hours worked.

7.     At Wachovia, I participated or assisted with the bank opening procedures about three times per week. I would log on my time the time when I started the opening procedures and I was always paid for that time prior to the time that the bank opened. If I participated in

2

Initials

closing procedures, I would log that time on my timecards as well and I was paid for that time. At Wachovia, I worked on average with 2-3 other Financial Specialists in my branch. They never complained to me that they were not being paid for opening or closing procedures.

8.      Now at Wells Fargo, I am generally not required to assist with opening or closing procedures at my branch. The bank tellers and the manager are typically responsible for opening and closing procedures. On rare occasions, I do participate in opening procedures. For example, several weeks ago, there was a snow storm. I arrived early and was the first person to arrive at the bank. I did the opening procedures that day and I put 8:30 on my timecard (instead of 8:45 when I was scheduled) because I assisted with opening procedures. I told my manager and he was okay with it. At Wachovia and Wells Fargo, I have never been told that I had to arrive at work early or stay late to perform opening/closing procedures without logging that time on my timecards.

9.      At Wachovia and Wells Fargo, I have participated in "call nights" where employees stay after bank hours to call prospective or current clients. At Wachovia, call nights were random. On average, I participated in 1-2 call nights per month. On those occasions, I stayed at the bank until 6:30 or 7:00 p.m. Sometimes the call nights were listed on my work schedule. Sometimes they were not. Either way, I always logged that time on my timecard. My manager did not have any problem with that. At Wells Fargo, I don't participate in call nights on a regular basis; I do less call nights that I did at Wachovia. But I still log all my time for call nights. For example, last month, me and several other employees at my branch were asked to stay for a call night. I logged that time and got two hours overtime that week. I always logged on my timesheets the hours I spent performing "call nights," and I was always paid for those hours.

3

Initials

10.     At Wachovia and Wells Fargo, my lunch breaks were listed on my schedule, but I do not always take my lunch during the time specified on the schedule. Instead, I coordinate lunch breaks with the other employees at the branch based on staffing and business volume. When the branch was less busy, I would regularly take a 30 minute lunch break each day. If I had to assist a customer during my lunch break, which occasionally happens, I stop my lunch, help the customer, then continue my lunch break later in the day. In any case, I do not work during my 30-minute lunch break. I do not recall Wachovia or Wells Fargo taking automatic deductions for my lunch breaks. As far as I know, that has never happened to me. I remember logging time for my lunch breaks on my own.

11.     At Wachovia, I was not required to do offsite marketing (i.e., visiting local business or attending community events to solicit new business) each day or even every month. Wachovia would sometimes schedule offsite marketing events for my branch in May or October, usually during one week in those months. They wanted us to step into the community, visit local business, and introduce myself to try to get business accounts. I would sometimes go by myself or sometimes with a partner, including my manager or other bankers. These offsite events were during my regular schedule and I was always paid for that time. I was never instructed by anyone at Wachovia to perform and have never performed offsite marketing during my lunch break or outside my regularly-scheduled hours. I was never instructed by anyone at Wachovia to perform and have never performed offsite marketing without compensation.

12.     At Wells Fargo, I am not generally required to do any offsite marketing   My branch is very busy and I usually do not have to do offsite marketing. When I do occasionally perform offsite marketing, I log that time on my timecards and I get paid for it. I have never

4

Initials

been pressured or asked by anyone at Wells Fargo to perform offsite marketing without compensation.

13.     I occasionally attend bank-wide meetings at my branch.  About 2-3 times per week, my manager has "huddle" meetings for a few minutes before the bank opens.  I have always been paid for that time.  I also sometimes stay late to attend branch meetings and I am paid for that time as well.  For example, several weeks ago I had to stay late until 6:00 p.m..  We had a branch-wide meeting to go over some bank procedures and policies.  It was a mandatory meeting and it was "on the clock."  Whenever I had similar bank-wide meetings at Wachovia, I was always paid for that time as well.

14.     I also participate in district-wide conference calls.  Some of these are calls to discuss new bank products.  Some are calls to discuss the district's performance.  These calls are usually during banking hours and I am paid for that time.  If I have to participate on a conference that is outside of my schedule, I still log that time on my timecard and I am paid for that time.  For example, tomorrow I have a call scheduled for 4:00-5:00 p.m., even though I am scheduled to leave work at 4:30.  I will ask my manager if he wants me to participate until 5:00 p.m. If so, I will log that time.  I know my manager will not have a problem with that.  Whenever I had similar district-wide conference calls at Wachovia, I was always paid for that time as well.

15.     Wachovia and Wells Fargo set certain performance expectations and requirements for my position.  That is how I am evaluated every year.  Although I have to work hard each day to try to meet those expectations, I choose not to work off the clock to meet my performance goals—I try to work smarter, not harder.

16.     My managers at Wachovia and Wells Fargo have always instructed me to accurately log all my hours on my timecards.  My manager Michael says "make sure you keep

5

Initials

track of your time." None of my supervisors at Wachovia or Wells Fargo have asked me or pressured me to perform work without reporting it to the company on my timesheet. I was never to adjust my time entries to reflect less time than what I actually worked. I believe I have reported and have been paid for all hours that I worked as an employee of Wachovia and/or Wells Fargo.

17.     At some point during my employment with First Union Bank or Wachovia, the bank reclassified all Financial Specialists and made me "salaried with overtime," The company explained this classification to me and the way I was paid under this compensation plan. I remember receiving an email with this information and calculations that explained how I was paid. I also remember that the company included my incentive compensation in the overtime calculations. I understood this was the way I was paid as a Financial Specialist.

### VOLUNTARY PARTICIPATION

18.     I have voluntarily agreed to provide this declaration to Wells Fargo. I understand that my decision whether to provide this declaration will have no effect on my job. I have had the time to review the contents of this declaration and the opportunity to make any changes necessary so that it is accurate. I agreed to speak with the attorney representing Wells Fargo voluntarily. Before speaking with me, the attorney for Wells Fargo explained to me that I did not need to speak with them, and that I could stop the discussion at any time. The attorney for Wells Fargo informed me that my employment with Wells Fargo would not be affected regardless of what I told them, or if I decided I did not want to speak with them. The attorney for Wells Fargo further explained to me that I could speak with the lawyers representing the plaintiffs.

6


Initials

I declare under penalty of perjury under the laws of the United States that the foregoing

is true and correct. Executed on _February 12_, 2013 in _White Plains_,

New York.

Deborah Raukohl

7

Initials

# Exhibit

# N-4

## <u>DECLARATION OF GIOVANNI GRANDE</u>

I, Giovanni Grande, based on my personal knowledge and pursuant to 28 U.S.C. § 1746, state as follows:

1.      I am over the age of 18 and I have personal knowledge of the matters presented in this declaration, and if called upon I could and would testify to the truth of the facts contained herein.

2.      I started working for Wachovia in April of 2008 as a Financial Specialist in the Thornwood, New York branch.  Approximately one year later I became a Personal Banker 2. For the past three years I have been a Regional Bank Private Banker (RBPB).  While the Thornwood branch is still my main branch, I have also worked out of the Armonk, New York and Chappaqua, New York branches for the past two years.

3.      During my time at the Thornwood branch I have had approximately six different managers.  Each manager has a different management style and utilized certain techniques, such as "huddle meetings" or "call nights" differently.  There have also been times that the Thornwood branch has had no Stores Manager, including the present time.

4.      During the year that I worked at Wachovia I worked from approximately 8:30 a.m. until 4:00 p.m.  Monday - Friday and then from 8:30 a.m. until 12:30 p.m. on Saturday. After the conversion to Wells Fargo the weekday hours that my branch is open extended from 3:00 p.m. until 5:00 p.m.  As such, on most nights I currently work from 8:30 a.m. until 5:30 p.m.  I have always received overtime pay for hours worked over 40.

5.      When I first arrive at the bank I assist with certain opening procedures, such as helping the tellers process any "night drops" or ATM deposits, however, since we obtained enhanced ATMs at our branch approximately four years ago there are no longer any opening

1


Initials

procedures that need to be performed with respect to the ATMs.   I am always paid for these tasks that I perform the bank opens.

6.     In addition to assisting with the bank opening procedures, we sometimes have "huddle meetings."  Whether we have these meetings, and how frequently we have them, has varied during the time I have worked at the Thornwood branch since different managers have different opinions about their usefulness.  For example, one of my first managers, Bill Foster, held "huddle meetings" daily.  Other managers I have had only held these "huddle meetings" when there was something urgent that needed to be discussed with the bank staff.  Since we currently have no Store Manager at the Thornwood branch, we do not have any "huddle meetings."

7.     During my entire time working for Wachovia/Wells Fargo I have always taken at least a 30 minute break for lunch.  While the weekly schedule that we receive has a set time for lunch, myself and the other bankers at my branch determine who will take lunch when so as to ensure that we have adequate staffing.

8.     I always bring lunch with me to work and I like to eat lunch at my desk and go on the computer during my lunch break.  I do this so that if one of my customers comes into the bank I can take a break from my lunch and talk to them.  If my lunch break is cut short as a result, I then take the remainder of my 30 minute lunch break at some other time during the day.  I always ensure that I take at least 30 minutes of uninterrupted break time.  Other bankers that I work with leave the bank during their lunch or break or sit in the break room so that they are not disturbed by any customers and take their full 30 minute break all at once.  This is our choice to make.  I do not recall ever having any automatic deductions made for my lunch break and it has

2

Initials

always been my responsibility for ensuring that I take a 30 minute break and that I enter the break on my timecard.

9.      When the bank closes I assist with closing procedures and also finish up my own work before leaving.  The very last thing that I do prior to shutting down my computer is entering my time - which I do daily.

10.      Since the conversation to Wells Fargo the system we have used to keep track of our time has been Time Tracker.  During the Wachovia time period we used a similar program called Webtime.  It was our responsibility to enter our time accurately on both systems. Regardless of what time I was scheduled to work, I always entered the precise hours that I actually worked on both Webtime and Time Tracker.

11.      Having worked in the banking industry for many years, my biggest fear was that if I did not enter my time correctly and account for all hours I actually worked I could get in trouble for that, including being terminated.  Since I have a mortgage, a wife and kids, I don't want to jeopardize my job by not entering my time I inaccurately.

12.      At least once per week we have always had "call nights" at the Thornwood branch.  These "call nights" start when the bank closes and then last for approximately two hours.  I have always been paid for these "calls nights," and have received overtime compensation if working these "call nights" caused me to work over 40 hours per week.

13.      At the Thornwood branch we sometimes have "onsites" which is when we set up balloons, coffee and cookies and try to solicit business from certain individuals.  For example, we recently had an "onsite" for the employees of a limousine company, Royal Coach, since a lot of their employees come to the bank to have their checks cashed.  We set up this "onsite" for the purpose of signing these employees up for checking accounts and other bank products.  During

3


Initials

these "onsites," which are only held during regular bank hours, I stand with the teller in order to try and sell bank products to these individuals. We call this technique "seller behind the teller."

14.     I have also done a few "offsites" which is when we go to a potential client to try and solicit business. I have only performed a few "offsites" and for each one I did it during regular business hours and was paid for this time since I entered it into Time Tracker (or Webtime before that).

15.     We occasionally have bank-wide meetings to discuss certain branch-related issues. When we do have such meetings, they occur during regular bank hours so that I am paid for this time. If the meeting happens to take place either before or after bank hours, I am also compensated for this time. I have always been paid for attending bank-related meetings, regardless of whether they have been held during the bank's regular business hours.

16.     During my time at both Wachovia and Wells Fargo I was never pressured to work extra hours and not record this time. No manager ever pressured me to falsely represent my hours worked on my timecard in order to limit my hours to 40 for the week.

## VOLUNTARY PARTICIPATION

17.     I have voluntarily agreed to provide this declaration to Wells Fargo. I understand that my decision whether to provide this declaration will have no effect on my job. I have had the time to review the contents of this declaration and the opportunity to make any changes necessary so that it is accurate. I agreed to speak with the attorneys representing Wells Fargo voluntarily. Before speaking with me, the attorneys for Wells Fargo explained to me that I did not need to speak with them, and that I could stop the discussion at any time. The attorneys for Wells Fargo informed me that my employment with Wells Fargo would not be affected

4

GG
Initials

13970472v.1

regardless of what I told them, or if I decided I did not want to speak with them.  The attorneys further explained to me that I could speak with the lawyers representing the plaintiffs.

I declare under penalty of perjury  under the laws of the United States that the foregoing is true and correct.  Executed on ___*Febuary 12th*___, 2013 in ___*White Plains*___, New York.

_____.
Giovanni Grande

5

GG
Initials

13970472v.1

Exhibit

N-5

## DECLARATION OF JOHN GURBA

I, John Gurba, based on my personal knowledge and pursuant to 28 U.S.C. § 1746, state as follows:

1. I am over the age of 18 and I have personal knowledge of the matters presented in this Declaration. If called upon I could and would testify to the truth of the facts contained herein.

2. I am currently employed as a Personal Banker at the Wells Fargo store located at Broadway Avenue and 70th Street in New York City, New York.

3. I work for Wells Fargo now; however, I started my employment with Wachovia in April 2009. I started at my current branch, which was then a Wachovia branch, as a Financial Specialist. When the store transitioned to Wells Fargo, my title changed to Personal Banker.

4. As a Financial Specialist for Wachovia, I understood that I was a salaried employee and I received overtime pay at one-half times my regular rate of pay when I worked more than 40 hours in a workweek. I received the same base salary regardless of how many hours I worked. When I started working with Wachovia as a Financial Specialist, the company informed me that I would be paid in this manner. The offer of employment letter that Wachovia gave me also outlined and explained this compensation.

5. As a Financial Specialist, I was primarily responsible for the sale of financial solutions to customers. I planned my daily activities around reaching my sales goals: I followed up with recent customers, used prospectors to develop lead list, and made approximately twenty prospecting calls a day. I also assisted with walk-in traffic and customer service issues. Once a week, I went out into the neighborhood during my regular shift to meet potential customers face-to-face. I also managed resources starter kits, notarized documents, and provided signature guarantees. I also completed my scheduled training, answered and returned calls and answered and returned e-mails. For all of these activities, I recorded the actual time I spent performing this work on my timesheet and I was paid for all of this time.

6. I occasionally participated in offsite company-sponsored marketing events outside of my regular schedule. But I was always paid for this time. For example, I manned a booth on a Saturday afternoon for almost four hours during gay pride week. I recorded this time on my timesheet and I was paid for this time. But my personal preference was to participate in one-on-one marketing. For example, during my regularly-scheduled hours I would leave the branch and "cold call" or canvass around the neighborhood. I also recorded all of this time spent canvassing on my timesheet and I was paid for this time.

7. I also participated in a variety of store and company activities. I helped out in the lobby when necessary. I also participated in call events from time to time, typically when business was slow. Call events usually took place after business hours and I was always compensated for that time. I also attended mandatory monthly store or marketing meetings. During these

1

Initials

meetings, we would review store numbers, set the monthly agenda, review service scores, and review marketing campaigns that were in play. These meetings usually took place after the branch closed, they typically started at about 6:30 p.m. and lasted for about an hour. I always recorded the time I spent attending these meeting on my timesheet and I was always paid for that time. I also attended district manager conference calls; however, these calls took place during my regularly scheduled shift. For all of these events I accurately recorded my time on my timesheet and I was paid for that time, including any overtime.

8. My Branch Manager prepared my work schedule, with my input. The schedule was usually posted a few weeks in advance. The Branch Manager handed out a copy of the schedule at the end of the preceding week. I typically only worked Mondays through Fridays because my store was not open on Saturdays or Sundays. But approximately 6-8 times per year, I worked during a Saturday shift at another bank location near by. My schedule and actual hours worked typically varied each week based on business needs and the specific schedules and requirements of the customers at the bank.

9. At Wachovia, I worked some amount of overtime most weeks, but the amount of overtime I worked generally varied each week. I worked overtime when customers stayed at the branch after it closed or if I had to attend a monthly store meeting. I was not required to get approval for this overtime. In fact, I never had any issues with being paid for all of the time I worked, including any overtime.

10. I closed the branch on most days. When I had to close the bank, I was scheduled to leave the branch 30 minutes after the bank closed. This 30-minutes gave me time to perform the closing procedures. When I opened the store, I was scheduled to arrive 30 minutes before the bank opened, which again allowed me time to perform the opening procedures. I was always paid for my time performing opening and closing procedures. If I started working before my scheduled start time or continued working after my scheduled end time, which happened on occasion, I always recorded this time on my timesheet and was paid for this time, including any overtime.

11. A 30 minute lunch break was scheduled into my day. I was encouraged to take my lunch break and I never had an issue taking my lunch break. I did not perform any work during lunch.

12. At Wachovia, I was told to record all of the time that I worked on my timesheet. I sometimes worked overtime, especially when someone called out or we had a mandatory meeting. Sometimes I also would "flex" my time, which meant that if I worked late or did not take a lunch break on one day I would try to leave earlier another day that same workweek. Regardless of whether I would "flex" my time or receive overtime, I was always paid for all of the time I worked and I never had any adjustments made to my hours.

13. I was responsible for keeping track of the actual hours I worked using the MyTime computer software. We did not have a store policy with regard to when we had to record our time, but the time recorded needed to be accurate, complete and timely. Personally, I logged in when I

2

Initials

started working and signed out when I left the branch for my lunch break or at the end of my shift. My Branch Manager reviewed my time weekly and never questioned my time.

14. I was never asked to work off the clock or adjust my time entries to reflect less time than what I actually worked. I never worked off the clock at Wachovia. I both reported and was paid for all of the hours that I worked as an employee of Wachovia. I am not aware of any other Financial Specialists at my branch or elsewhere who worked regular or overtime hours and were not properly paid for that work.

## VOLUNTARY PARTICIPATION

15. I have voluntarily agreed to provide this declaration to Wells Fargo. I understand that my decision whether to provide this declaration will have no effect on my job. I have had the time to review the contents of this declaration and the opportunity to make any changes necessary so that it is accurate. I agreed to speak with the attorneys representing Wells Fargo voluntarily. Before speaking with me, the attorneys for Wells Fargo explained to me that I did not need to speak with them, and that I could stop the discussion at any time. The attorneys for Wells Fargo informed me that my employment with Wells Fargo would not be affected regardless of what I told them, or if I decided I did not want to speak with them. The attorneys for Wells Fargo further explained to me that I could speak with the lawyers representing the plaintiffs.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on _October 27th_, 2011 in _New York_, New York.

_[signature]_

John Gurba

3

Initials

13865453v.1

# Exhibit

# N-6

## DECLARATION OF JOHN ZUZULO

I, John Zuzulo, based on my personal knowledge and pursuant to 28 U.S.C. § 1746, state as follows:

1.     I am over the age of 18 and I have personal knowledge of the matters presented in this Declaration.  If called upon I could and would testify to the truth of the facts contained herein.

2.     I am currently employed as a Private Banker I at the Wells Fargo Yorktown branch located at 1937 Commerce Street Yorktown Heights, New York.  I was initially hired by Wachovia in 2007 as a Financial Specialist II, which requires licenses.  I began working at the Briarcliff Manor branch in 2007, which was a Wachovia branch at the time, after I completed Financial Specialist training, and worked there for three months.  From 2008-2011 I worked at the Pleasantville branch as a Financial Specialist, and the branch changed over to Wells Fargo in March 2010.  In December 2010 my title changed to Private Banker II.  In 2011 I began working at the Yorktown Heights branch and have been there ever since.

3.     As both a Financial Specialist at Wachovia and a Private Banker with Wells Fargo I performed the same job duties, essentially providing sales and service to branch customers.

4.     I currently report to Branch Manager Deepak Vashisht, who has held this position since I began working at this branch.  My managers at Pleasantville in reverse order included: Mr. Vashisht, Ladreka Wrotan, Jason Panton, Christina Stanton, and Sonya Earle.  I do not recall my manager at the Briarcliff Manor location.

5.     When I was hired as a Wachovia employee, Human Resources explained to me that I would be paid on a salary basis that would compensate me for all of the hours I worked in

1

Initials

a week.  It was also explained to me that I was eligible for overtime if I worked hours above 40 hours in a workweek, for which I would be compensated. If I worked overtime, I would receive an additional payment of one-half times my regular rate of pay for all hours I worked in a workweek over 40 hours.  These same standards have applied during my time at Wells Fargo as well.

6.      During my new hire training with Wachovia, the company's quarterly incentive compensation program was explained to me.  Prior to the conversion to Wells Fargo, I again received training about Wells Fargo's quarterly incentive program, which differed slightly.

7.      Throughout my employment both at Wachovia and Wells Fargo, the Branch Manager has created the schedule on a monthly basis, which is usually delivered to each banker by hand at the beginning of the last week of the month prior.  Every schedule is set up so each banker is scheduled for forty hours per week, but varying hours depending on whether we are scheduled to work on Saturdays, which is usually twice per month.  If I am scheduled for Saturday, my typical schedule would be: Saturday 9 a.m. to 1 p.m., Monday 11 a.m. to 5 p.m., Tuesday 11 a.m. to 6:30 p.m. (if a call night was scheduled), Wednesday 8:45 a.m. to 5 p.m., Thursday 8:45 a.m. to 6:30 p.m., and Friday 8:45 a.m. to 6 p.m.  If I do not work Saturday, my schedule is usually 8:30 a.m. to 5 p.m. Monday and Wednesday, and staying until 6 p.m. on Friday and until 6:30 p.m. on Tuesday and Thursday if there is a call night scheduled.  For each week day I work I am scheduled for a one hour (unpaid) lunch break.

8.      I usually take a one hour lunch break, which is included on our schedule.  However, the bankers decide among themselves as a team which time is the best for everyone to go to lunch, depending on foot traffic in the branch.  Sometimes I eat my lunch at the branch in the break room and sometimes I go out.  I record my time in/time out for lunch in the

2


Initials

as part of my daily time.  On rare occasions I will also stay late to finish up paperwork, but I always record this time and am paid for it.

12.     While at Wachovia and also at Wells Fargo I have recorded my time in their respective timekeeping systems.  At Wachovia this system was called Webtime.  I do not recall the specifics of this system but do not remember it differing very much from the system we now use at Wells Fargo.  At Wells Fargo the system is called Time Tracker.  Every morning when I arrive at work I record my entry time, as well as when I leave for/return from lunch, and every evening when I leave for the night I record the time I left.  The system requires me to manually enter the time; it does not prepopulate.  At the end of every week the system asks if I have double-checked my time before I can hit "complete" to enter my time for the week.  I always record my actual hours worked, not my scheduled hours.

13.     I received training on the Webtime system when I was first hired by Wachovia, and I have received periodic online module training of Time Tracker since the move to Wachovia.  My managers have also always answered any questions I had about recording my time.

14.     With respect to time and attendance, all of my managers have stressed the importance of being there on time, and to take our scheduled lunches.  Their emphasis has also been on us recording our time every day.

15.     I cannot think of any other distinctions between my job while working under Wachovia and now at Wells Fargo, besides the timekeeping system.  I do recall more overtime during my time at Wachovia as a Financial Specialist, as Wells Fargo seems to keep more of an adherence to a 40 hour per week schedule.  For any overtime worked under both Wachovia and Wells Fargo  I was always paid for it.

4


Initials

16.     I cannot think of any instances where I did not record the time I worked, and I was never pressured by management to perform work without putting it on my timesheet.  I was never asked to work off-the-clock.

17.     I am not aware of any Wachovia Financial Specialists/Wells Fargo Private Bankers who worked overtime hours and were not paid for that work.  I am aware of an instance recently where a couple of employees forgot to complete a required training module and the company asked if they would complete it if possible on their day off.  One employee did come in on his day off to complete the training and he recorded this time and was paid for it.

18.     With our call nights, I feel like I am usually able to meet our performance goals in my normal 40 hour workweek.

## VOLUNTARY PARTICIPATION

19.     I have voluntarily agreed to provide this declaration to Wells Fargo.  I understand that my decision whether to provide this declaration will have no effect on my job.  I have had the time to review the contents of this declaration and the opportunity to make any changes necessary so that it is accurate.  I agreed to speak with the attorneys representing Wells Fargo voluntarily.  Before speaking with me, the attorneys for Wells Fargo explained to me that I did not need to speak with them, and that I could stop the discussion at any time.  The attorneys for Wells Fargo informed me that my employment with Wells Fargo would not be affected regardless of what I told them, or if I decided I did not want to speak with them.  The attorneys for Wells Fargo further explained to me that I could speak with the lawyers representing the plaintiffs.

5


Initials

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on ~~February 19~~ , 2013 in ~~White Plains~~, New York.

~~John~~

John Zuzulo

6

13864568v.1

# Exhibit

# N-7

## DECLARATION OF JOSH BERENGUT

I, Josh Berengut, based on my personal knowledge and pursuant to 28 U.S.C. § 1746, state as follows:

1.     I am over the age of 18 and I have personal knowledge of the matters presented in this Declaration. If called upon I could and would testify to the truth of the facts contained herein.

2.     I am currently employed as a Personal Banker at the Wells Fargo branch located at 3rd Ave & 78th Street in New York City, New York. Even though I am currently a Wells Fargo employee, I was initially hired by Wachovia around June of 2009 as a Financial Specialist. My Branch Manager was Jason Moore.

3.     As a Wachovia Financial Specialist, my most important job responsibilities were providing customer service and selling banking products to branch customers.

4.     As a Wachovia Financial Specialist, I was paid on a salary basis for all hours that I worked in a week, whether I worked more or less than 40 hours per week. I received my salary twice a month, or the 15th and last work day of the month. However, I also received an additional amount of overtime compensation for all hours over 40 that I worked in a workweek. The rate of this additional compensation was one-half times my calculated hourly rate for the workweek in which I worked over 40 hours. My salary and half-time overtime payments were explained to me in an offer letter that I received from Wachovia prior to starting as a Financial Specialist.

5.     The Branch Manager prepared the schedule for the Financial Specialists at my branch. The schedule was prepared in advance for the upcoming month, and a copy of the schedule was handed out to me.

1

JMB
Initials

6.  My typical schedule required that I opened my branch. My opening duties were mostly limited to unlocking the building and deactivating the alarm. Whenever I arrived prior to my scheduled opening time and started performing duties, I always entered my time on my timesheet to reflect the actual hours I spent working and performing opening procedures, not just my scheduled hours. I understood that my schedule was just a guide and that I had to reflect on my timecard my actual hours worked.  I was never told that I had to arrive at work early to perform opening procedures without compensation.

7.  My typical schedule also required that I closed my branch. My closing duties required me to finish up any customer transactions and secure the building. Sometimes I also helped the Tellers with their closing duties. Performing these duties sometimes required that I stay past the time listed on my schedule. Whenever I left the branch after my scheduled closing time, I always entered my time on my timesheet to reflect the actual hours I spent working and performing closing procedures, not just my scheduled hours. I was never told that I had to stay at work late to perform closing procedures without compensation.

8.  The lunch break policy at my branch allowed me to take a 30 minute lunch break. My lunch breaks were typically scheduled for me, but I and other Financial Specialists sometimes ignored the schedule and coordinated lunch breaks amongst ourselves. Our Branch Manager always encouraged us to take our lunch breaks within a certain timeframe to ensure that we had employees on the floor to assist customers. I usually took my lunch break in the branch's break room. I was never instructed not to take my lunch break, although sometimes my Branch Manager asked me to assist with a customer while I was on my lunch break. Whenever I worked during my lunch break, I was always paid for that time. I also made sure that I returned to the

2

JMB
Initials

break room when I was done assisting the customer so that I could finish the remainder of my 30 minute lunch break.

9.      Sometimes I was required to stay past my scheduled shift and make outbound calls to current and prospective customers to follow up on sales leads. This was called a call night. But this was fairly rare at my branch. Whenever I participated in call nights, I always logged the time I spent on these activities on my timesheet, and I was always paid for that time.

10.     Because my branch was relatively busy, it was uncommon for Financial Specialists to leave the branch to perform offsite marketing activities. However, I did offsite marketing at Hunter College one time during normal business hours and I was paid for all the time I spent performing this offsite marketing. I never did any marketing activities at Wachovia, including offsites or canvassing businesses, off the clock.

11.     Throughout my employment with Wachovia, I was responsible for keeping track of my own time. I was not required to clock in and clock out each day. Rather, at some time during the week I manually entered my actual hours worked, including the time I began my work, took unpaid breaks, and left work. I was required to make sure all of my time for the week was entered and finalized by the end of the day on Friday. Before I finalized my time each week, I reviewed my time to make sure it is accurate.

12.     Throughout my employment with Wachovia, I reviewed my paycheck to ensure that it contained payment for the actual number of hours that I worked during the pay period. It was always accurate.

13.     For as long as I worked as an employee of Wachovia, the policy at my branch and the corporate policy was that employees were required to record the hours they spent working on their timesheets. If I worked prior to or after my regular shift, even if I did not receive prior

3

Initials

approval, the Wachovia corporate policy required me to enter on my timesheet all of the actual hours that I worked.

14.     No member of management at Wachovia ever told me, asked me, or pressured me to perform work without reporting it on my timesheet to the company. I was never asked to work off the clock or adjust my time entries to reflect less time than what I actually worked. I reported and was paid for all hours that I worked as an employee of Wachovia.

15.     I am not aware of any Wachovia Financial Specialists, at my branch or elsewhere, who worked regular or overtime hours and were not properly paid for that work.

## VOLUNTARY PARTICIPATION

16.     I have voluntarily agreed to provide this declaration to Wells Fargo. I understand that my decision whether to provide this declaration will have no effect on my job. I have had the time to review the contents of this declaration and the opportunity to make any changes necessary so that it is accurate. I agreed to speak with the attorneys representing Wells Fargo voluntarily. Before speaking with me, the attorneys for Wells Fargo explained to me that I did not need to speak with them, and that I could stop the discussion at any time. The attorneys for Wells Fargo informed me that my employment with Wells Fargo would not be affected regardless of what I told them, or if I decided I did not want to speak with them. The attorneys for Wells Fargo further explained to me that I could speak with the lawyers representing the plaintiffs.

4

JMB
Initials

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on <u>November 4th</u>, 2011 in <u>New York</u>, New York.

<u>Josh Berengut</u>

13864698v.1

JMB
Initials

Exhibit

N-8

## DECLARATION OF MICHAEL NELSON

I, Michael Nelson, based on my personal knowledge and pursuant to 28 U.S.C. § 1746, state as follows:

1.     I am over the age of 18 and I have personal knowledge of the matters presented in this Declaration.  If called upon I could and would testify to the truth of the facts contained herein.

2.     I started working at Wachovia as a Financial Specialist in June 2005 at the branch in North White Plains, New York.  I worked there for approximately one year, first as a Financial Specialist and then as a Senior Financial Specialist.  In approximately June or July 2006, I transferred to a new Wachovia branch in Harrison, New York.  When Wachovia merged with Well Fargo, I began working as a non-exempt Regional Bank Private Banker until approximately November 2011.

3.     At the North White Plains location, the bank was open 8:30 a.m. to 3:00 or 3:30 p.m. Monday thru Friday, and closed late on Thursdays at 6:00 p.m.  The drive thru lane at the bank was open a bit earlier and closed a bit later than the lobby hours.  On Saturdays, the bank was open 9:00 a.m. to 12:00 p.m.   The Harrison branch had slightly different hours.  It opened 9:00 a.m. to 4:00 p.m. Monday thru Friday, and closed late on Fridays at 6:00 p.m.  It was open Saturdays from 9:00 a.m. to 1:00 p.m.   At Wachovia, my typical schedule was 8:30 - 3:30 p.m. or until the bank closed, but my actual hours varied from week to week depending on business needs and the staffing at the branch. Sometimes I would work 38 hours per week and sometimes I would 42 or 45 hours per week.

4.     When the Harrison branch was taken over by Wells Fargo, the bank hours changed.  Now, the bank hours at the Harrison branch are 9:00 to 5:00 p.m.  Monday thru

1


Initials

Thursday and until 6:00 p.m. on Fridays. The bank is open Saturdays from 9:00 a.m. to 1:00 p.m. The Harrison branch does not have a drive thru teller lane. My typical work schedule when I was a non-exempt Private Banker at Wells Fargo started 15-20 minutes before the bank opened and I finished when the bank closed. I may have had a set work schedule at Wachovia and Wells Fargo, but I did not typically stay without those set hours. Instead, I worked within the requirements/parameters of my business and the needs of my customers. If a customer wanted to meet me after bank hours, I would ask the branch manager to stay late with me after the branch closed. He would stay there until the end of the meeting. I would log this time and I was paid for that time, even if it was past the official time that was set on the schedule.

     5. At Wachovia, I participated in opening and closing procedures, sometimes on a regular basis. If I had to do opening procedures, I would arrive with another bank employee at 8:30 to open the store. I took 5-10 minutes to perform the opening procedures. I logged all the time on my timecards and I have always been paid for that time. Most days, I was one of the last people to leave the branch. I regularly participated in closing procedures. On nights when I did not have a late appointment, I would wait for the tellers to finish with their work and close out their teller drawers. I also logged all the time I spent on closing procedures on my timecards and I have always been paid for that time. Sometimes if a customer came into the branch a few minutes before the bank closed or if a teller had a problem balancing a cash drawer, sometimes I would not leave the bank until 30-45 minutes past the bank closing. In those situations, I also logged my time to reflect when I stopped working, including any closing procedures, and I was paid for that time.

     6. When I was a non-exempt Private Banker at Wells Fargo, more often than not I did not participate in opening or closing procedures. There were other employees, including

2



tellers, who were typically responsible for opening and closing procedures. When I did participate in opening or closing procedures, however, I always logged that time on my timecard and I was always paid for that time. At Wachovia or Wells Fargo, my managers never asked or pressured me to perform opening or closing procedures without compensation.

7.      At Wachovia, I occasionally participated in "call nights." During the time I would call potential customer from leads generated for the branch to schedule appointments for them to come into the bank. Some of the call nights were scheduled ahead of time and some of them were scheduled randomly at the last minute. On average at Wachovia, I participated in call nights once a week, although sometimes we had them scheduled and we did not hold the call night. With Wachovia, because the branch closed earlier, our call nights were from 4:00-6:00 p.m. or 3:30-5:00 p.m. I always logged the time for these call nights and if the additional hours for working on a call night caused me to work over 40 hours in a week, I would get paid overtime.

8.      At Wells Fargo when I was a non-exempt Private Banker I also occasionally participated in call nights. These were similar to the ones I did at Wachovia. I logged all that time and I was always paid for that time. At Wachovia or Wells Fargo, my managers never asked or pressured me to do call nights without compensation.

9.      At Wachovia, I would participate in offsite marketing events two to three times per month. I would sometimes drive to various local business to conduct sales presentations. Sometimes I would go to local universities to do the same. I would typically schedule these offsites ahead of time. They were typically during the banking hours. I do remember one instance when I participated in an offsite outside of my regular schedule. But I didn't treat this any differently in terms of logging my time. I always logged the time for offsite marketing on my

3



timecards—even if it was outside my regular shift or banking hours—and I was paid for all the time I did offsite marketing.

10.     At Wells Fargo, I was not required to perform offsite marketing as a non-exempt Private Banker.  On rare occasions, I have participated in some offsite marketing events at Wells Fargo during high-profile events.

11.     At Wachovia and Wells I have occasionally attended meetings with all the employees at the branch.  I have attended "huddle" meeting each morning at my bank when we discussed and reviewed the branches sales goals and expectations.  These meetings would take place 10-15 minutes before the branch opened.  If I was there and participated, I always got paid for that time (at Wells Fargo and Wachovia).  At Wachovia, we had monthly market meetings involving all Financial Specialists in the district to discuss sales topics and recognition events. Many times these meetings were held at a central location or district hub and were typically scheduled after the branch closed.  I have also attended about six district or regional meetings in Manhattan since 2008/2009.  I logged all the time for those meetings and I was paid for that time.  I have never been asked or pressured to attend any work-related meetings without compensation.

12.     At Wachovia and Wells Fargo, my managers have always stressed that I have to accurately keep track of my time and accurately log all my hours worked on my electronic timecards.  This was the case even when I worked overtime.  At Wachovia, I worked plenty of overtime, especially when I worked Saturdays.  My manager has always told me: "If you need to work, we are going to pay you to work.  Don't be afraid to put in for overtime.  If you work the hours, put in for the overtime."  If I have to stay late or work extra on any particular day, I try to flex the rest of my schedule for that week by coming late or leaving early some other day that

4


Initials

same week.  But if that is not possible, I have logged overtime and my manager has always approved it.

13.     I believe the performance goals at Wachovia for Financial Specialists were challenging.    And the goals for non-exempt Private Bankers at Wells Fargo were also challenging.  But in my experience, I did not have to regularly work extra or harder to meet those goals.  And I never felt pressure to work additional hours or to work off the clock to meet my goals.  I worked flexible hours or additional hours to accommodate my clients, not because the performance goals were/are very difficult.  When I worked additional hours, I told my manager and he approved my overtime if I could not flex my schedule.  I tried to schedule my workweek to come close to a 40-hour week by starting my shift late or leaving early some other day that week.  Sometimes this was possible and sometimes it was not.  When I could not flex my schedule, I was paid overtime.

14.     I am not aware of any Wachovia Financial Specialists or Wells Fargo Private Banker my branch or elsewhere who worked regular or overtime hours and were not properly paid for that work.

**VOLUNTARY PARTICIPATION**

15.     I have voluntarily agreed to provide this declaration to Wells Fargo.  I understand that my decision whether to provide this declaration will have no effect on my job.  I have had the time to review the contents of this declaration and the opportunity to make any changes necessary so that it is accurate.  I agreed to speak with the attorney representing Wells Fargo voluntarily.  Before speaking with me, the attorney for Wells Fargo explained to me that I did not need to speak with them, and that I could stop the discussion at any time.  The attorney for Wells Fargo informed me that my employment with Wells Fargo would not be affected

Initials

regardless of what I told them, or if I decided I did not want to speak with them.  The attorney for Wells Fargo further explained to me that I could speak with the lawyers representing the plaintiffs.

I declare under penalty of perjury  under the laws of the United States that the foregoing is true and correct.  Executed on _____ February 12th, 2013 in _____ White Plains _____, New York.

Michael Nelson

6



Initials

# Exhibit
# N-9

## DECLARATION OF STEVEN THOMAS

I, Steven Thomas, based on my personal knowledge and pursuant to 28 U.S.C. § 1746, state as follows:

1. I am over the age of 18 and I have personal knowledge of the matters presented in this Declaration. If called upon I could and would testify to the truth of the facts contained herein.

2. I am currently a Regional Private Banker at the Wells Fargo store located at 17th Avenue and 7th Street in New York City, New York.

3. Although I am currently a Wells Fargo employee, I was a Financial Specialist for Wachovia from April 2007 until approximately July 2010. I have been at my current branch since August 2007.

4. During my time at Wachovia, I understood that the branch and corporate policy required me to record all my time worked. I was also trained to record my actual time worked.

5. When I was a Financial Specialist with Wachovia, I was a salaried employee. I received the base same salary regardless of the number of hours I worked. I also received overtime for hours that I worked over 40 in a week at one-half times my regular rate of pay. I understood this compensation scheme applied to all Financial Specialists. I knew this was how I would be compensated as a Financial Specialist when I was hired by Wachovia because the company explained this compensation structure to me. I also recall that the Wachovia handbook explained this compensation structure and stated that the overtime rate was half-time for Financial Specialists.

6. As a Financial Specialist, I was primarily responsible for serving clients and providing customers financial solutions. I addressed customers daily financial needs, including loans, credit, mortgages and other appropriate solutions.

7. I have never been told not to take my lunch break or that I could not go to lunch because the store was too busy. At Wachovia, I regularly took my lunch break and did not work during that time.

8. As a Financial Specialist, I participated in a "Call Event" activity, which was an after-hours marketing initiative when we stayed after the bank closed to call customers. I always recorded that time on my timecard and was compensated for my time participating in "Call Events."

9. During my employment as a Financial Specialist, I occasionally participated in "Wachovia at Work," which were offsite marketing events where branch employees went to different businesses to give presentations on the financial solutions the company had to offer. I only participated in these events during my regularly-scheduled shift and I recorded and was

1

Initials

compensated for my time working during these events. At Wachovia, I never participated in marketing activities outside of my regularly-scheduled hours and I never performed any marketing work off the clock.

10. In my experience as a Financial Specialist, my Branch Manager prepared my work schedule taking into account business needs and my personal needs. The schedule was only just a guide. If I worked more than my scheduled hours, I was compensated for that time, and if I worked more than 40 hours in a workweek I received overtime.

11. As a Financial Specialist, my actual hours worked typically varied from week to week, because some weeks I worked more than 40 hours and other weeks I worked less than 40 hours. I typically opened the store, so many days I worked from 7:30 a.m. to 4:00 p.m. The schedule included the 30 minutes it took to perform the opening procedures before the branch opened at 8:00 a.m. Similarly, on the occasions when I closed the store, the schedule included 30 minutes after the branch closed to perform the closing procedure. If it took me longer than 30 minutes to perform closing duties I recorded that time on my timecard and I was paid for that time. In either case, I was always paid for the time I performed opening and closing procedures.

12. Sometimes, as a Financial Specialist, I worked beyond my scheduled hours. For example, if I had client meetings, company meetings, participated in call nights, or had to process loan documents, I would stay after my scheduled shift. I typically "flexed" this time by leaving early on Friday. If I could not "flex" the time, I was paid for overtime. I recorded on my timecard the hours I actually worked. I never had any issues with my compensation when I recorded the time I actually worked, including any overtime, regardless of whether such overtime was preapproved.

13. As a Financial Specialist for Wachovia, I was responsible for keeping track of the actual hours I worked each day. I was encouraged to record the hours I worked each day, but I had to have all of my time entered by the end of the week.

14. At Wachovia, I was never asked to work off the clock or adjust my time entries to reflect less time than what I actually worked. I both reported and have been paid for all hours that I worked as an employee of Wachovia. I am not aware of any other employees at my branch or elsewhere who worked regular or overtime hours and were not properly paid for that work.

## VOLUNTARY PARTICIPATION

15. I have voluntarily agreed to provide this declaration to Wells Fargo. I understand that my decision whether to provide this declaration will have no effect on my job. I have had the time to review the contents of this declaration and the opportunity to make any changes necessary so that it is accurate. I agreed to speak with the attorneys representing Wells Fargo voluntarily. Before speaking with me, the attorneys for Wells Fargo explained to me that I did not need to speak with them, and that I could stop the discussion at any time. The attorneys for Wells Fargo informed me that my employment with Wells Fargo would not be

_____
Initials

affected regardless of what I told them, or if I decided I did not want to speak with them. The attorneys for Wells Fargo further explained to me that I could speak with the lawyers representing the plaintiffs.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on ___11/1_____, 2011 in _New York_____, New York.

_____
Steven Thomas

3

Initials

Exhibit

N-10

## DECLARATION OF YASSAMAN HASHEMI

I, Yassaman Hashemi, based on my personal knowledge and pursuant to 28 U.S.C. § 1746, state as follows:

1. I am over the age of 18 and I have personal knowledge of the matters presented in this Declaration.  If called upon, I could and would testify to the truth of the facts contained herein.

2. I am currently a Personal Banker at the Wells Fargo store located at 9th Avenue and 15th Street in New York City, New York.

3. Before I was a Wells Fargo employee I was hired by Wachovia as a Financial Specialist in July 2009.  I worked as a Financial Specialist until Wachovia merged into Wells Fargo.

4. When I worked as a Wachovia Financial Specialist, I was a salaried employee, which meant that I received the same salary twice a month regardless of how many hours I worked, including hours over 40 in a workweek.  But if I worked more than 40 hours in a workweek, I understood that I received overtime compensation at half times my regular rate of pay for those hours.  I understood this was how I was being paid because Wachovia explained this compensation system to me when I was initially hired.

5. As a Financial Specialist, my daily tasks included responding to email, performing administrative tasks, retrieving voicemail, addressing contact events, returning client calls, addressing walk ins, assisting with customer issues, managing the ATM, making sales calls, and sometimes marketing at a nearby technical school.

6. I also participated in offsite marketing events, customer call campaigns, team meetings and conference calls.  My Wachovia store had call events, where I stayed an hour after closing to make calls to potential and actual customers I could not reach during the day.  I logged the time for these call events on my timecards and I was always paid for that time.  Once a quarter, we had branch meetings, which took place after the branch closed.  I was also paid for all of these meetings.  About twice a month, I visited a local trade school to market to the starting class, which I did during my regularly-scheduled shift.  I was compensated for participating in all of these activities.

7. My Branch Manager prepared the work schedule with input from me and the other Financial Specialists at my branch.  We were required to have at least one Financial Specialist in the store during business hours.  The schedule was prepared every two or three weeks, and every two or three weeks I received a printout of the schedule for the next two or three weeks.

8. I did not have a standard work schedule at Wachovia.  Because we did not always have enough Financial Specialists at my branch I was not guaranteed to work the same number of hours each workweek.  My scheduled and my actual hours worked varied from week to week.  I knew my schedule was just a guide.  I was not limited to recording on my timecard

1

Initials

only the hours from my schedule.  To the contrary, I always recorded the actual time I worked on my timecard and I was paid for that time, including any overtime.

9.  For as long as I worked for Wachovia, the policy at my branch and the corporate policy was that I was supposed to record all of the time I actually worked on my timesheet.  If I worked more than 40 hours during the workweek, I recorded those hours and was paid overtime on them.  I never had a problem being paid for the hours I work, including any overtime.  For example, I never had a problem being paid overtime for the five hours of offsite marketing I performed on one Saturday each month.  In fact, my Branch Manager encouraged me to account for all of the time I worked.

10. I was responsible for keeping track of the hours I worked using the MyTime computer software.  I was responsible for making sure my actual hours worked were entered correctly in MyTime.  I was encouraged to clock in at the start of the day, clock out for lunch, clock back in after lunch, and clock out when I left for the day.  I had to enter my time by the end of the week and then it was verified and approved weekly by the Branch Manager, who never questioned or altered my time.  I entered my time daily.

11. I was typically scheduled for a 30 minute lunch break each work day.  I took my lunch break each day as long as there was another Financial Specialist in the store.  If I did not take my lunch break, then I was paid for working through that time

12. No member of Wachovia management ever told me, asked me, or pressured me to perform work without reporting it on my timesheet to the company.  I was never asked to work off the clock or adjust my time entries to reflect less time than what I actually worked.  I reported and was paid for all hours that I worked as an employee of Wachovia. I am not aware of any other Financial Specialists at my branch or elsewhere who worked regular or overtime hours and were not properly paid for that work.

### VOLUNTARY PARTICIPATION

13. I have voluntarily agreed to provide this declaration to Wells Fargo.  I understand that my decision whether to provide this declaration will have no effect on my job.  I have had the time to review the contents of this declaration and the opportunity to make any changes necessary so that it is accurate.  I agreed to speak with the attorneys representing Wells Fargo voluntarily.  Before speaking with me, the attorneys for Wells Fargo explained to me that I did not need to speak with them, and that I could stop the discussion at any time.  The attorneys for Wells Fargo informed me that my employment with Wells Fargo would not be affected regardless of what I told them, or if I decided I did not want to speak with them.  The attorneys for Wells Fargo further explained to me that I could speak with the lawyers representing the plaintiffs.

Initials

13865127v.1

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on _NoVember 1_, 2011 in _New York_, New York.

Yassaman Hashemi

3

Initials